## DEMAREST *against* HARING.

In slander, on        SLANDER, tried at the *New-York* circuit, *December 8th,*
a motion in   1824, before EDWARDS, C. Judge.
arrest of judg-
ment, because
the words are not actionable, they must be taken to have been proved as laid, and with the intention imputed by the declaration

In slander, words are to be understood, by courts and juries, according to their plain and natural import ; according to the ideas they are calculated to convey to those to whom they are addressed.

When doubts arise, the jury are to decide whether the words are used maliciously, and with a view to defame ; this being a question of fact, to be collected from all the concomitant circumstances ; and the court are to determine whether such words, taken in the malicious sense imputed to them, can alone. or by the aid of the circumstances stated upon the record, form the legal basis of an action.

Courts and juries will understand the words in the same way other people would.

Words charging the plaintiff with being the father of a bastard child by his sister-in-law, of which she was pregnant ; and that he wished the defendant *to make away with it,* are actionable in themselves, as importing a wish that the defendant should destroy the child as soon as born    It imports that the plaintiff applied to him, to commit murder.

To be actionable in themselves, words must impute some act constituting a crime or misdemeanor, for which corporal punishment may be inflicted in a temporal court.

It is a high misdemeanor, for one person to apply to another, and solicit him to commit murder.

Words not actionable in themselves, become so by being spoken of persons in a particular calling or profession ; and, *semble*, in any lawful employment by which they may gain a livelihood.

Words imputing incontinency to a clergyman, are within this rule.

Where words may be understood in two different senses, one as imputing a crime, and the other not, it is proper to submit the question how they were understood, to the jury.

*Semb.* That setting forth the plaintiff's character in slander, as that he is a clergyman : and then a slander affecting him in that character, is sufficient, without saying the slander was spoken of him, in relation to that character.   And *vid.* the cases cited by *Emmet* and *Oakley, arguendo :* last paragraph of their argument. S. P.

The *first count* of the declaration stated, that the plaintiff was a minister of the gospel of the reformed Dutch church, ordained and duly installed as the clergyman of the reformed Dutch church, at *Kakiat*, in the town of *Hempstead*, in the county of *Rockland*, at a certain yearly salary. That he faithfully performed his duty as such. That the defendant, wickedly and maliciously intending to injure the plaintiff in his good name, fame, &c., and in order to disgrace him, and to cause it to be believed that he was guilty of felony, adultery and lewdness, &c., on the 8*th* of *August*, 1823, at, &c., spoke and published certain Dutch words of the plaintiff, setting them forth, of the same signification and meaning with these English words : " That his," (the defendant's,) " sister *Peggy*," (*Margaret Haring* meaning,) " had been delivered of a child," (meaning an illegitimate child ;) " and that the *domine*," (meaning the plaintiff,) " was the father of the said child ; and that he," (the plaintiff,) " had laid it upon *Timothy*," (meaning one *Timothy Secor*,) " to clear himself. But he," (the defendant,) " believed it was the *domine's*," (meaning the plaintiff ;) " and that the *domine* had desired him *to make away with it*," (meaning that the plaintiff attempted to procure and induce the defendant, feloniously to kill and murder the child.)

The *second count* was substantially the same, slightly varying the words.

The *third count* was the same with the first, as to the words, except that in conclusion, it charged the defendant with saying of the plaintiff, that he had desired the defendant and *his wife* to make the child *out of the way ;* imputing by innuendo the intent, as expressed in the first count, to induce the defendant and his wife, feloniously to kill and murder the child.

The declaration then concluded thus : " By means of the committing of which said several greviances, &c. the said plaintiff hath been, and is greatly injured in his said good name, &c. ; and brought into public scandal, &c. amongst all his neighbors ; and the persons composing his

said congregation &c., insomuch that divers, &c., suspect-
ed, &c., the said plaintiff to have been, &c., a person guil-
ty of felony, adultery and lewdness ; and have by reason,
&c., refused, &c., to have any transaction, acquaintance or
discourse with him, &c.   And the said plaintiff hath been
obliged to expend great sums of money, &c. to make man-
ifest his innocence, &c.   And a certain *Samuel Helmes*
and *Henry Van Houten*, and divers other members of his
said congregation, who, before the speaking and publishing
the aforesaid false and scandalous words, by the said de-
fendant, of and concerning the said plaintiff, had been and
continued members of the reformed Dutch congregation,
to wit, at *Kakiat* in the town of *Hempstead*, in the county
of *Rockland*, and then were yearly subscribers of a large
sum of money, to wit, ten dollars yearly, to the support
and maintenance of the said plaintiff and his family, have
refrained from attending divine service under the ministry
of the said plaintiff, and have withdrawn themselves from
his said congregation ; and have refused any longer to
pay their yearly subscriptions aforesaid, for the support of
the said plaintiff and his family, and still do refuse ; all
which is to the damage of the said plaintiff, &c. ; and
therefore, &c.

*Plea*, the general issue.

On the trial, the plaintiff proved by *J. S.* that the defen-
dant had spoken of the plaintiff at two different conversa-
tions, a set of words in the low Dutch language, which
were taken down in writing, as stated by the witness, by
the reverend *C. T. Demarest*, and the reverend *W. El-
tinge*.

The reverend *C. T. Demarest*, having been sworn as
an interpreter, translated the words as follows : " There
was confusion by *Secor's* respecting that child.   Witness
asked him whose child ? He, defendant, said his sister,
*Peggy's*.   He, the defendant, said the domine would have
that I and my wife *Caty, should make that child away,
or out of the way.*   (The witness said the import of the
Dutch words here used, would be either to conceal, hide
or destroy ; and he should think, in connexion with what

UTICA,
Aug. 1826.

Demarest
v.
Haring.

was said about the soul, it should be rendered destroy.) He, (defendant,) said he could not do so, as it had a soul to answer for as well as I ; and he, (defendant,) said that the domine had laid it upon *Tim* to clear himself ; but he believed it was the domine's. Defendant said then, he (the domine) would have it put upon the stoop, or on the street ; but the defendant would not have that. Then the domine would bring it to the blacks ; but he, the defendant, would not have that either. The domine took the child away by force from its mother, and brought it to bad people, (or persons of no great repute,) and the child had sufferred there till it died. He, (the defendant,) said something about complaining to the grand jury ; but he did not remember whether defendant said he would do that, or that it ought to be done."

The second conversation was an explanation of the former ; and a mere expression of a belief by the defendant, that the plaintiff was the father of the child.

Witness, (*J. S.*) further said, he thought at the time, that the defendant intended to be understood as saying, that the domine wanted him and his wife to murder the child ; and he was shocked and scared when he said it ; and he thought, if it was true, the domine was no preacher for him.

The witness, *J. S.*, was then cross examined ; and stated that the first conversation was after the defendant had been elected an elder in the church ; and about the time they were to elect deacons and elders. Before the conversation, the domine had refused to call off the defendant a third time, which was necessary to warrant his ordination. The conversation was after the death of the child. The expression, " make it away," or " put it away," is the same in Dutch. *Peggy* had been living off and on at the domine's, a long time. She was his wife's sister. The plaintiff had told the witness that the child was born at *Newark* ; and he understood the plaintiff, that he went down to *Newark* with the girl ; and that the plaintiff and defendant went down after the child was born. *At a trial*

before the consistory, the plaintiff acknowledged that he and *Lansing Haring* had agreed to keep the matter concealed. The plaintiff said many plans were laid between them; but the last was adopted. The plans were, that the child was to be laid on the stoop; put on the street; put by blacks; and in the poor house. All the plans were talked of before the child was born. The domine admitted that the plan of going to *Newark* was laid by him, and adopted; and that the child, after it was born, was to be put out; and the mother was to return home. In connexion with the plan of the child going to the poor house, the plaintiff was to take the child at two years old.

The reverend *W. Eltinge*, being sworn as an interpreter on the part of the defendant, translated the words relied upon by the plaintiff, as importing a wish to induce the defendant to kill or murder the child, as follows : " And then the domine would have, (or willed,) that the child should be made aside, (or out of the way,) the domine would have, (or willed,) that *Haring* and his wife should make that child aside, (or out of the way.") He testified that the meaning of these words as used by *J. S.* and taken in connexion with the context, was no other than to make aside; to put out of the way; to secrete the child so as to hide the shame of the family ; and if any other meaning should be attached to them, it would be a forced one ; an indirect meaning ; but the meaning is the same as the English words " put out of the way," or " make away with;" and must depend on circumstances. And the witness gave several illustrations of the meaning when applied to different circumstances.

The plaintiff then proved two other conversations with two different witnesses, the words of which were the same, as to *making away* with the child, as stated by the first witness ; and one of the two last witnesses understood it to mean the same as the first.

To prove the special damages, the plaintiff then called *J. A. Johnson*, and asked him whether divers persons had not left the congregation in consequence of the reports against the plaintiff's character.

To this question, the defendant's counsel objected; 1. Because the plaintiff had not supported the averments in his declaration, that he was a clergyman, established, &c. over the church, as alleged; and had not made title to any income from that society; and 2. That he was confined in his proof to the damages specifically laid; and could not introduce proof, in support of the allegation, that divers other persons had refused to pay.

The judge decided that the plaintiff had proved enough as to his special character, to warrant the proof; and that it was admissible under the allegation in the declaration;

And the counsel for the defendant excepted.

The plaintiff then proved that he was duly licenced and ordained. His licence was produced and read. He also proved his call from the church of *West New-Hampstead* and *Ramapo*, an incorporated religious society, dated the 16*th* of *November*, 1808, at a certain salary and privileges; which call was accepted, and he regularly installed, pursuant to the call.

*Johnson* was again called; but did not state any special damage.

The plaintiff, however, rested; and

The defendant's counsel insisted that the plaintiff should be called, inasmuch as no special damages had been proved; and the words were not actionable in themselves.

The plaintiff's counsel insisted, that the words were actionable in themselves, even if spoken of an ordinary person; and especially so, when spoken of a clergyman as such.

The judge decided, that the words imputing a want of chastity, or charging him with committing fornication, were not actionable, *per se ;*

That there was no evidence of special damage;

But that the charge, made by the defendant, that the plaintiff desired him " *to make away with the child,*" or " *make the child away,*" or " *make the child out of the way,*" if made in the sense charged in the declaration, were actionable in themselves; that the sense or meaning, in which those words were used by the defendant, was pro-

per matter to be submitted to the jury ; and that there was sufficient evidence to carry the cause to the jury upon this point. That whether the *innuendoes* were well laid, was matter appearing upon the face of the record ; and it was not competent for him to pass upon it. But there was sufficient evidence of their truth to carry the cause to the jury, upon that point also.

He, therefore, refused to nonsuit the plaintiff ; and the defendant's counsel excepted.

Verdict for the plaintiff.

*E. Williams*, for the defendant, now moved in arrest of of judgment, or for a new trial on the bill of exceptions.

In arrest, he took the following grounds :

1. That the words laid are not actionable in themselves.

2. They are not alleged to have been spoken of the plaintiff, in relation to his profession, trade or calling.

3. The innuendoes are not justified by the words as laid.

4. The first and second counts contain no allegation of special damages ; and the verdict being general, the judgment must be arrested.

He observed, that the words could not be enlarged by the innuendo ; (1 *Saund.* 343, *note* (4) ; 8 *John.* 109 ; *Starkie on Slander*, 302, *Am. ed.* ; 1 *Chit. Pl.* 383 ;) and there is no colloquium, nor any averment that a child had been born, or murdered or killed ; or that there had been any attempt to kill a child. The illegitimacy of the child is not averred ; nor whether the girl was married or single. The words, " that the domine had desired the defendant to make away with the child," are, without any authority, made by the innuendo an attempt to procure the defendant to murder it. The defects should have been supplied by proper averments. (*Starkie on Slander*, *Am. ed.* 302, 304.)

In support of the motion for a new trial, he made these points :

1. The words in the declaration are not proved.

2. The averment that the plaintiff was installed the clergyman of the congregation at *Kakiat*, was not supported by the proof ; and the evidence of damage, in that charac-

ter and office, was improperly admitted. (*Herrick* v. *Lapham*, 10 *John.* 281.)

3. The words proved, are not actionable in themselves, taken in their ordinary acceptation, as they must be. (9 *East*, 93.)

4. The innuendoes are not justified by the words laid or proved; and the point, whether they were proved should not have been submitted to the jury.

He observed, that intead of one, the plaintiff is proved to have been settled the minister of two churches; neither of them the church stated in the declaration. And though he failed as to special damages, he had the full benefit of this evidence with the jury. It varied from the declaration, which avers a settlement over one church only, naming it.

Then it comes to this: does the slander import a crime punishable as a felony? It charges a mere *wish* to destroy the unborn infant, or a *desire* that it should be destroyed; certainly nothing beyond this. No overt act is charged. (*Starkie on Slander, Am. ed.* 89.) A mere wish to commit a felony will not sustain an indictment; nor would a request. (*Starkie on Slander, Am. ed.* 89, 21, 22, 23, 66, 67.)

It cannot be pretended that the words, as laid, imported any thing more than a wish to hide or secrete the child. The words, according to the construction of them, proved, or sought to be proved at the trial, imported a wish to kill or murder. This was one variance.

If there are any material words proved, in order to make out the charge, beyond what the declaration contains, this is a variance. The declaration should have stated them by way of colloquium or otherwise. (*Starkie on Slander, Am. ed.* 302, 304.) If the words, "the child has a soul to gain or lose," be material to make out the sense contended for, they should have been stated.

*T. J. Oakley* and *T. A. Emmet*, contra, made the following points:

UTICA,
Aug. 1826.

Demarest
v.
Haring.

1. The words laid are actionable in themselves. After verdict, they must be taken to have been spoken in the sense alleged in the declaration.

2. They are actionable on account of the professional character of the plaintiff.

3. They are actionable on the ground of the special damage alleged, which, on the motion in arrest, must be taken to have been proved. (*Harley* v. *Herring*, 8 *T. R.* 130. *Starkie on Slander*, *Lond. ed.* 191.)

4. The innuendoes laid cannot vitiate. They may be rejected as surplusage, if not necessary to support the action. (*Smith* v. *Cooker*, Cro. Car. 512. *Lindsey* v. *Smith*, 7 *John.* 359.)

They insisted, that the allegation of special damage must be taken to apply to all the counts. It does so in terms, though it comes in at the conclusion. It was not necessary to repeat it at the close of each count.

When words are equivocal in themselves, an innuendo is proper to fix the criminal meaning. (*Wilner* v. *Hold*, Cro. Car. 489. *Starkie on Slander*, 339, 341.) The words, "to make away," are of that character; and may be thus explained. They are not necessarily innocent on their face. They are, in English, understood to mean killing or murder, when applied to a child, oftener than any thing else. And in *Falkner* v. *Cooper*, (*Carter*, 55-6) *these very words were held actionable.* At any rate, the words cannot always mean the mere act of secreting. If the words *may* import criminality, then the verdict fixes the intent, and must be sustained. The jury have found the meaning. After a verdict for the plaintiff, the words shall be taken in their worst sense. (*Starkie on Slander*, *Lond. ed.* 65.)

Words importing a solicitation to commit a felony are actionable. "He wished me to make away with the child," is, in one sense, the charge of solicitation to do it. For this the plaintiff, beyond all doubt, would be punishable in the temporal courts. (*Passie* v. *Mondford*, Cro. Eliz. 747. *Preston* v. *Pinder*, *id.* 308. 2 *Chit. Cr. L.* 117,

*note (y.)  id.* 50, 993.    *Mayne* v. *Digle, Freem.* 46.
*Ham. N. P.* 300, 301.)

Demarest
v.
Haring.

Taken together, the language charged, plainly imports
that the child was illegitimate; and imputes to the plain-
tiff a want of chastity; a lewdness which unfits him for
his duties as a clergyman; and destroys his professional
character.   Words to this effect, spoken of a clergyman,
were held actionable in *Dod* v. *Robinson,* (*Aleyn,* 63.)
They are then actionable on the principle which makes
any words so, as affecting a man in his particular profes-
sion or calling.   The example usually put, is that of charg-
ing a lawyer with being a knave.   To charge a blacksmith
with keeping false books, would be actionable for the
same reason.   To say of a clergyman, he is a drunkard, is
actionable.   (*M'Millan* v. *Birch,* 1 *Bin.* 178.   *Chad-
dock* v. *Briggs,* 13 *Mass. Rep.* 249, *S. P.*)   The court
cannot but see that a charge of incontinency would affect
a clergyman in his profession; though it would not have
that effect when made against an ordinary person.   In this
country, clergymen of all denominations have the same
right to protection as the established clergy in *England.*
(1 *Bin.* 184-5.   *Starkie on Slander, Am. ed.* 107.)

Where words are equivocal, it is sufficient to state them
in the declaration, point them with an *innuendo ;* and then
prove the truth of the *innuendo* by circumstances.   No-
thing is more common than to prove words not laid, in or-
der to show the sense in which those which are laid, were
spoken.   The declaration need not be loaded with the par-
ticulars.   Words are always to be taken as they are un-
derstood by the hearers. (*Cooper* v. *Smith, Bridgm.* 60.)

After proof of special damages had failed, further proof
was admitted.   This was not objected to at the trial; and
its admissibility cannot be questioned here.   The proof of
settlement over two churches instead of one, as alleged in
the declaration, was a part of this unquestioned proof.   The
court will intend that the two churches spoken of are in
truth but one; and that this is the same church mentioned
in the declaration.   This might have been shown, if there

had been an objection at the trial. The defendant's coun‑ sel should have put his finger upon the variance.

There was no ground for a nonsuit. The words alleg‑ ed were substantially proved. This is sufficient. The proof need not literally correspond with the words set forth in the declaration. It was sufficient to carry the cause to the jury, that some of the witnesses understood the words to import criminality. The jury were to de‑ termine the sense of the words. They are always to do this, if there be any ground for doubt. (*Dexter* v. *Taber*, 12 *John.* 239. *Ex parte Baily*, 2 *Cowen*, 479, 482. *Goodrich* v. *Woolcott*, 3 *Cowen*, 231, 239, 40.)

That the *colloquium* in the declaration need not apply the words spoken particularly to the professional charac‑ ter of the plaintiff; but that it is sufficient to apply them in proof, the counsel cited *Stanton* v. *Smith*, (*Ld. Raym.* 1480;) *Reeve* v. *Holgate*, (2 *Lev.* 62;) *Sir John Isham* v. *York*, (*Cro. Car.* 15;) *Taylor* v. *Starkey*, (*id.* 192;) *Webb* v. *Nicholls*, (*id.* 459;) *Fleetwood* v. *Curle*, (*Cro. Jac.* 557;) *Carn* v. *Osgood*, (1 *Lev.* 280;) *Goodyear* v. *Bishop*, (*Cro. Car.* 265;) *Cawdry* v. *Highley*, (*id.* 270;) *Fowle* v. *Robbins*, (12 *Mass. Rep.* 498;) and *Chaddock* v. *Briggs*, (13 *id.* 249.)

*Williams*, in reply. The first and second counts are complete in form; and profess to rely on themselves. The allegation of special damage at the conclusion of the dec‑ laration, cannot be attached to them. If it was intended to support them on that ground, they should each have charged the special damage individually and distinctly. As inserted, it cannot aid any beside the third and last count. If this be not so, where do these counts begin? Where do they end?

We deny that doubtful words can be helped by an in‑ nuendo. This can be done only by a *colloquium*. (*Star‑ kie on Slander*, Am. ed. 302.)

The authorities cited to shew that the act of solicitation is legally criminal, do not apply to a case of this kind. A solicitation to kill, in order to be criminal, must relate to a

UTICA,
Aug. 1826.

Demarest
v.
Haring.

living person. The declaration does not aver that the child was born, or had even quickened in the womb. The wish, or request, or solicitation insisted on, therefore, could not relate to a felonious killing. It could be no more than a request to commit a misdemeanor. This is not an offence indictable at all.

There is no more reason why words, importing a want of chastity, should be deemed actionable, when spoken of a clergyman, than of the advocate, the judge, or the physician. In neither case are they actionable. Even the female is not protected by the law against such an imputation; though no one is so much injured by it.

*Curia*, per SAVAGE, Ch. J. (After stating the facts.) With regard to the motion in arrest, the enquiry is, whether the words, as laid, are actionable; for, on this motion, we are to take it for granted that they were proved as laid; and with the intention imputed.

The doctrine of construing words in *mitiori sensu*, has been exploded; and a more rational rule now prevails: that words are to be understood according to their plain and natural import; according to the ideas they are calculated to convey to those to whom they are addressed. (*Goodrich* v. *Woolcott*, 3 *Cowen*, 239-40, *and cases there cited.*) Mr. *Starkie*, in his valuable treatise on slander, (*p.* 44,) states the rule as follows: "Both judges and jurors shall understand words in that sense which the author intended to convey to the minds of the hearers, as evinced by the whole circumstances of the case. It is the province of the jury, where doubts arise, to decide, whether the words were used maliciously and with a view to defame; such being matter of fact, to be collected from all concomitant circumstances; and for the court to determine, whether such words, taken in the malicious sense imputed to them, can alone, or by the aid of the circumstances stated upon the record, form the legal basis of an action." Courts and juries will understand them in the same way that other people would. (*Walton* v. *Singleton*, 7 *Serg. & Rawle*, 451.)

The jury have found that the words were spoken maliciously, and with a view to defame and injure the plaintiff, as laid in the declaration. If they had been spoken otherwise, the verdict would have been different.

What idea, then, do we, and all persons of common understanding, receive from the charge, that the plaintiff wished the defendant *to make away* with a bastard child, of which he was the father, and standing in the relation of brother-in-law to the mother? What must have been his motive, but to prevent entirely, and in the most effectual manner, a public exposure of his misconduct; that he might avert disgrace and infamy? I apprehend the plain meaning is, that the plaintiff wanted the defendant to destroy this infant child as soon as born. Does this charge, then, amount to an offence which is punishable, and one involving moral turpitude? It is not necessary, here, to say whether it be actionable, in general, to impute evil inclinations or wishes. It is sufficient to take the rule as established, that the charge must impute some act constituting a crime or misdemeanor, for which corporal punishment may be inflicted in a temporal court. (*Starkie on Slander*, 41.)

Is it not a high misdemeanor, for one person to apply to another; and solicit him to commit murder? There is, in such an act, something more than wickedness of intention. There is an act tending to carry such evil intention into effect. (*Passie* v. *Mondford, Cro. Eliz.* 747. *Preston* v. *Pinder, id.* 308.)

According to my understanding of this charge, in the declaration, the words are actionable in themselves, whether spoken of a clergyman or any other person.

There are other words, however, laid, which, spoken of individuals in general, would not be actionable; and it is objected that they are not so, when spoken of a clergyman.

The words convey a direct charge of incontinency.

It is familiar to all, that words not actionable in themselves, become so by being spoken of persons engaged in a particular calling or profession. Thus, to call a lawyer a knave, or a physican a quack, is actionable. So, also, to

UTICA,
Aug. 1826,

Demarest
v.
Haring.

call a merchant a bankrupt. And the action seems to extend to words spoken of a person in any lawful employment, by which he may gain his livelihood. (*Starkie on Slander*, 108.)

It has been contended, that this rule does not extend to clergymen; and there are some cases which look that way; but there are also cases and *dicta* of learned men in favor of the action.

The oldest case to which we have been referred, is *Dod v. Robinson*, (*Aleyn*, 63;) in which it was held, that, to say of a clergyman, " he is a drunkard," was actionable; drunkenness being an offence for which a clergyman is liable to be deprived of his preferment. So, he is a rogue and a dog. (*Pocock* v. *Nash, Comb.* 253.) So, he is a rogue and a contemplible fellow. (*Musgrave* v. *Bovey, Str.* 946.) These cases are cited by *Starkie*, in his Treatise on Slander, 107. *Hammond*, in his Treatise on the law of *nisi prius*, (*p.* 300,) says, To charge a man with seduction, adultery and such like, or to impute to him criminal inclinations, is not defamatory, and the reason assigned is, because he is not thereby exposed to the vengeance of the law. He further states, that words actionable in relation to one's profession or trade, are such as impute to him the want of those qualifications which are essential. As to attribute knavery to a lawyer, ignorance to a physician, *profligacy to a divine*, cowardice to a soldier, or dishonesty to a tradesman. In *M'Millan* v. *Birch*, (1 *Bin.* 184,) *Tilghman*, Ch. J. says, " The reason why certain expressions are actionable, when applied to persons of certain professions, is this; that from the nature of the case, it is evident that damage must ensue. So, to say of a clergyman, that he is a drunkard; because these words, if believed, must deprive him of that respect, veneration and confidence, without which he can expect no hearers as a minister of the gospel." The temporal damage arising from a loss of reputation for moral rectitude, in his profession, is as great to the clergyman as to a lawyer. Then, why is it, that the former should not be equally protected

UTICA,  in his character with the latter?  Finding such respectable
Aug. 1826.  authority for the position, I am decidedly in favor of hold-
Thallhimer  ing words, importing a charge of incontinency against a
v.  clergyman, actionable.
Brinckerhoff.

Being of opinion that the words are actionable, a part in themselves, and a part in respect to the plaintiff's profession, it is useless to consider the nature and office of an innuendo; or to inquire whether special damages are laid as to more than one count.

The judge correctly decided, that the sense in which the words were used, was proper to be determined by the jury.

In my judgment, both the motion in arrest, and for a new trial, must be denied.

Motions denied.