WATERS *versus* JONES.

*Relative to what words are actionable,* per se.
*As to evidence of the general character of a plaintiff,*
*in slander.*

1. To charge one with having burned a gin house, is actionable,
   *per se.*
2. To say of one, "*I believe you are guilty,*" &c. of a crime, is
   equivalent to a positive charge of it.
3. So, it is a good cause of action, in slander, to say of a per-
   son, "it is the general opinion of the people in J's neighbor-
   hood, that he J, burned C's gin house."
4. To say of a person, "I can prove that J burnt the gin house
   of C, by H, or that J was in a condition about the gin
   house, previous to the burning of it, which caused every per-
   son in J's settlement to believe J did burn the gin house" are
   likewise actionable.
5. To say of J, "he has been at different times, close about
   where C's gin house was burnt, in disguise with a sheep skin
   or bear skin," is not actionable.
6. In the action of slander, evidence of the general character of
   the plaintiff, is admissible.

This was an action of trespass on the case, institu-
ted by Jones against Waters, in the Circuit Court of
Butler.

The declaration consisted of six counts; and, af-
ter the usual inducement, alleged, that before the
commitment of the said grivances, by the said defen-
dant, a certain Francis Coleman, then of said county
of Butler, was lawfully possessed of a certain cotton
gin house, situated in the said county, stored with
cotton; that afterwards, to-wit, on the 15th July,
1835, the said cotton gin house, with the cotton there-

in stored, were wholly burned and consumed by fire: that the defendant well knowing the premises, and contriving wickedly and maliciously to injure the plaintiff in his good name, and reputation; and to cause it to be believed that he was guilty of the crime of arson—spoke and published of and concerning the plaintiff, these following false, scandalous, and defamatory words, to-wit:

First–"*He* [meaning plaintiff] *burnt the gin house of Francis Coleman.*"

Secondly—" *It is the general opinion of the people in his* (Jones) *neighborhood, that he* (Jones,) *burnt Coleman's gin house, and it is not denied by said Jones in his settlement; and in consequence of which, he*(Jones) *could not get but two or three votes, in his settlement*"— meaning, for the representative branch of the Legislature.

Thirdly.—" *I can prove that Jones burnt the gin house of Coleman, by Edward H. Herbert, and Hardy Herbert; or that he was in a condition about the gin house, previous to the burning of it, which caused every person in his settlement to believe that he* (Jones) *did burn the gin house.*"

Fourthly.—" *Jones has been seen two or three times, and at different times, close about where Mr. Frank Coleman's gin house was burnt, in disguise with a sheep skin, or bear skin; and that he* (defendant) *could prove it, by Edward Herbert, and Hardy Herbert, and the Colemans.*"

Fifthly.—" *It is the general opinion of the people of his* (Jones) *neighborhood, that he* (Jones) *burnt the gin house of Coleman.*"

Sixthly.—" *I believe that he* (Jones) *knew of the burning of the gin, and was concerned in it,*" &c.

The defendant demurred to five of the counts in the declaration; and the demurrer was sustained, by the Court below, to the sixth count alone. The record recites, that a jury then came, and upon pleas and issue joined, rendered a verdict in favor of the plaintiff for the sum of fifteen hundred dollars.

A bill of exceptions, taken in the progress of the trial, relates, that during the examination of witnesses on the part of the defendant, the counsel for defendant was about to ask of the witnesses questions going to prove the general character of the plaintiff. The Court remarked, that it had rather hear authorities produced to support the propriety of the motion; to which it was replied, that there were no books at hand. The Court did not decide the point, as it was not further pressed. The counsel also offered a hand bill to a witness, and asked him if such a paper was seen by him in circulation; to which he replied, he had seen the same, or one similar; but such hand bill was not read to the jury, nor in the hearing of the Court. The Court refused afterwards to let the counsel for defendant allude to the contents of said hand bill in any way.

In charging the jury, the defendant's counsel asked the Court to charge, that if defendant had offered any proof going to show, that the words uttered by him were a current report in his neighborhood, and only repeated by him, should go in mitigation of damages; which charge the Court refused.

Argued by *Porter*, for the plaintiff in error.

COLLIER, J. — The defendant in error, (who was plaintiff below,) brought his action for slander, in

the Circuit Court of Butler. The declaration con-
tains six counts: to the first, the plaintiff in error
pleaded " not guilty;" and to the second, third, fourth,
fifth and sixth, he demurred, separately. The Court
sustained the demurrer to the sixth, and overruled
it as to all the others. Judgment was entered upon
the demurrer as to the sixth : and, to the other counts,
the record informs us, there were pleas and issues;
but what the character of those pleas was, we are
not informed.

The first count alleges, that the plaintiff in error
charged the defendant in error, with having falsely
and maliciously, burnt the gin-house, (a house in
which cotton was stored,) of Francis Coleman. The
other counts all refer to this.

The second and fifth counts allege, in substance,
that the plaintiff in error said of the defendant in
error, that it is generally believed, in his neighbor-
hood, that he burnt Francis Coleman's gin-house ; in
addition to which, the second count alleges, that such
general belief was not denied; and that the defen-
dant in error could not get more than two or three
votes for the house of representatives of the legislature
of this State.

The third count alleges, that the plaintiff in error
said, of the defendant in error, that he could prove, by
Edward H. and Hardy Herbert, that the defendant in
error burnt Francis Coleman's gin house, or was in such
a condition, previous to the burning of it, as caused
every person in his settlement, to believe that he
burnt it.

The fourth count sets forth, that the plaintiff in
error said, of the defendant in error, that he had been
seen, two or three times, and at different times, close

about where Frank Coleman's gin-house was burnt, in disguise, covered with a sheep, or bear-skin; and he, (the plaintiff in error,) could prove it, by Edward H. and Hardy Herbert.

It will be unnecessary to say any thing about the sixth count, in as much as the demurrer was sustained, to it.

It appears, from a bill of exceptions, accompanying the transcript — first, that the plaintiff in error proposed to inquire into the general character of the defendant in error. The Court remarked, that it had rather hear authorities, on the point: to which it was replied, that there were no books at hand.— The proposition not being further pressed, it was not decided upon, by the Court. Secondly—the Court refused to allow the counsel for the plaintiff in error, to allude in any way, to a hand-bill, (which was shewn to a witness, who answered, that he had seen it, or one similar, on the ground, that it was not read in evidence. Thirdly—the Court refused, on motion, to instruct the jury, that if the plaintiff in error had offered any evidence, to show the currency of the imputations in his neighborhood, which he was charged with having made, and he merely repeated what was current, such evidence should go in mitigation of damages.

The jury found a verdict for the defendant in error, and judgment was rendered accordingly. And we are now asked to revise the questions of law, arising upon the bill of exceptions, and the demurrers to the second, third, fourth and fifth counts.

In reference to the second and fifth counts, they allege, substantially, that the plaintiff in error, has said, of the defendant in error, that the general be-

lief, in his neighborhood, imputes to him, the burn-
ing of Francis Coleman's gin-house.

To burn a cotton house, is made *arson*, by statute;
an offence, involving a great degree of *moral turpi-
tude*. According to the rule, laid down by this Court,
to ascertain whether words are actionable, in them-
selves, to charge one with having been guilty of the
crime, subjects the author of the charge, to an action
for damages. So, to charge one with having burnt
a house, of the description of any one of those de-
signated by the statute, is equally slanderous, as if
the offence was mentioned by name. Nor is it ne-
cessary to employ the precise designation which the
statute uses : any other terms, of equivalent mean-
ing, in popular understanding, are quite sufficient.
The statute does not make a gin-house, *eo nomine*, a
subject, touching which *arson* may be committed ;
but the terms " cotton house," are employed. Now,
as a gin-house is a house in which cotton is usually
stored, every one understands, that, by a charge of
burning it, is intended a house in which cotton is kept;
though there might be a gin there, also. We can,
then, discover no difference, so far as arson is con-
cerned, between a gin-house and cotton-house.

To maintain an action for slander, it is not neces-
sary that the charge of a crime should be direct and
positive—the imputation may be inferred from an in-
direct communication. Where a defendant expres-
ses a suspicion, or institutes a comparison, or delivers
the words as matter of hear-say, or by way of inter-
rogation, or answer, or exclamation, or uses disjunc-
tive or adjective words, or speaks ironically ; or, in
general, where the statement virtually includes or as-

sumes the commission of the principal act, or a strong suspicion of it."[a]

To say of one, "I believe," or "in my opinion, you are guilty of arson," is clearly actionable. In *Logan* vs. *Steele*,[b] it was held, that an action lay against the defendant, for having said of the plaintiff, "I have every reason to believe that he burnt my barn." So, in *Miller* vs. *Miller*,[c] the defendant said, of the plaintiff, "My watch was stolen out of the widow Miller's [plaintiff's] bar-room; and I have reason to believe Tina Miller took it, and her mother, [plaintiff,] concealed it. The Court decided that the assertion, "he had reason to believe, that the one took, and the other concealed it, is equivalent to the charge, that the one stole, or took it, and the other concealed it;" and that, the allegation, that his watch had been stolen, and he had reason to believe, &c., amounted to a positive averment; for a man only alleges a thing to be so, because he has reason for so believing it.

To the same effect are the cases of *Oldham* vs. *Peake*,[d] and *Stick* vs. *Wisdome*.[e] See, also, *Brown* vs. *Lamberton*,[f] and *Bonham* vs. *Boyer*,[g] and *Nye* vs. *Otis*.[h]

To say of one, "I have been informed, you are guilty of arson," without disclosing the name of the author, are words, for which an action will lie.[i]— Now, as belief is the result of evidence, to say, "I believe you are guilty of the crime," &c., is equivalent to saying "I have such evidence as convinces me, you have committed the crime," &c.; and is equivalent to a positive charge.

To charge the commission of a crime, upon hearsay, is actionable, as we have already seen. Here,

a Stark. on Slander,58

b 1Bibb,593

c 8 John. 58

d 2BlaR961
Cro.E.348
f 2 Binn. 34
g 3Binn.515
h 8Mass122

i 2Stark.Ev 879

the defendant in error is charged with having been guilty of arson, according to the general belief of his neighborhood. They could not believe, without proof, nor could the plaintiff in error have known their belief, had they not expressed it. The meaning of the imputation, then, is, the people of the neighborhood, of the defendant in error, generally, say of him, that they have reason to believe, that he burnt Francis Coleman's gin-house. Thus interpreted, the words spoken, furnish a good cause of action.

In regard to the third count, the words are charged to have been spoken in the disjunctive, and come within the rule, as laid down, in Starkie on Slander, 58; so, if a part be actionable, and are not explained away, by the other words, used, it is enough.— The first branch of the imputation contains words, indisputably actionable. The second branch charges the belief of the neighborhood, founded upon the condition of the defendant in error, previous to the burning, to be, that he burnt Francis Coleman's gin house. This is certainly tantamount to charging, that it is said and believed, that the plaintiff below, has committed arson, without furnishing the name of any individual to whom he may resort, for redress; and, according to the view taken of the second and fifth counts, the plaintiff in error is legally chargeable, upon either, or both branches of the imputation.

The fourth count imputes no crime directly, nor does it allege a state of facts, from which the commission of one can be necessarily inferred. The words spoken merely charge the defendant in error, with having been in a suspicious place, under suspi-

3 v. P.                    57

cious circumstances. These words, more especially when considered with reference to other parts of the declaration, do not charge directly or indirectly, positively or upon suspicion, any act or crime.

In respect to the assignments, founded on the bill of exceptions, we think the Circuit Court should have allowed the proposed inquiry to be made, into the general character of the defendant in error. That such inquiry was proper, on principle, we have no doubt. A man, whose general character is bad, as having been remarkable for a great want of moral principle, &c. certainly should not receive from a jury, the same amount of damages, [as he, whose conduct through life, has continually presented an example of moral beauty.

We find, too, that authority tolerates the admission of such proof.[a]

[a] Anth. N. P 185; 2 Cow. 811; 1 Root 354; ib.459 2 ib.149 ; 2 Hayle.222 2 N.&M'C 511; 3 Mass 546; 6 ib514 14 ib. 275 ; 2 Mar.372; 3 Con. 463 1 Binn. 92 ; H Holt's C 534

The proposition, to inquire into the general character of the defendant, seems to have been arrested by the Court, *mero motu*, and a desire expressed to hear some authority upon the point. The Court must, then, be understood to have arrested the examination, unless authority were offered, to shew its propriety. No authorities being at hand, and the Court so informed, the counsel had a right to consider its opinion against them, unless they were directed to proceed; and it would not, perhaps, have been quite courtious, to have proceeded in the inquiry, without a favorable intimation from the Court.

To the refusal of the Court to permit the paper, identified by a witness, to be referred to in argument, by the counsel for the plaintiff in error, there can be no valid objection.—The paper was not before the

jury, and could only become evidence, by being read to them; unless its reading was dispensed with.

The bill of exceptions discloses none of the evidence. We cannot, therefore, know whether the instruction asked of the Court, was pertinent. And, according to the repeated decisions of this Court, we are bound to consider the point presented, as abstract from the merits, and consequently immaterial.

For the refusal of the Circuit Court, to sustain the demurrer to the fourth count of the declaration, and for arresting the examination into the general character of the defendant in error, the judgment is reversed, and the cause remanded.