## BLACK AND WIFE *et al.*, *vs.* THORNTON.

1. It is competent for one who was a sheriff to state from entries on an execution in his own hand-writing, that the property was pointed out and sold as the property of D. T., when that fact appears by the entry, the witness stating that he invariably stated such facts when so in his entries, and never stated anything but facts therein, although he has no recollection of the facts.
2. In a question between persons, one claiming under a voluntary deed, and the other under a purchase, it is competent to prove what was said by such purchaser and others interested in the sale under whom he claims as to outstanding titles, not as conclusive evidence of want of notice, but as parts of the circumstances attending the sale.
3. Possession of a deed by grantee, or one taking interest under it, is presumptive evidence of its delivery in immediate execution of the purposes for which it was made.
4. It is error in the Court to charge the jury, "that there is a conflict in the evidence," when that is denied, it being for the jury to determine whether there is in fact a conflict.
5. When there is an apparent conflict between the testimony of one witness and two others, it is error to charge that the jury are to consider from the evidence whether the two are not mistaken, thus discriminating against the two, especially when the testimony is of the same character and alike impeached on the record.
6. It is error in the Court, in the charge, to give an undue and incorrect weight to a portion of the evidence, and which is in exclusion of other parts equally important.

Trover, in Elbert Superior Court.    Tried before Judge THOMAS, at March Term, 1860.

This was an action brought by Lemuel Black and his wife, and Willis Scroggins and his wife, against William T. Thornton, to recover damages for the alleged conversion of certain slaves.

On the trial of the case, the following testimony was adduced:

### *Evidence for Plaintiffs.*

Ilra H. Cleveland testified, under a commission, in answer to interrogatories: That he had seen the paper attached

to the interrogatories—a deed of gift from Daniel Thornton to Martha E. Thornton and Priscilla H. Thornton, dated 17th day of November, 1838; that it was signed by Daniel Thornton, in presence of himself and Elijah Jones for the purpose specified in the deed, and they signed it as witnesses all at the same time; it was made for the purpose named in the deed; Joseph Blackwell drew the deed; did not recollect who inserted the 17th day of the month; the deed was signed on the day it bears date, by Daniel Thornton; no one else was present but the maker, Daniel Thornton, the witnesses, Cleveland and Jones; it was done at Daniel Thornton's blacksmith-shop; heard Reuben Thornton say, in conversation with witness, between witness' residence and Elberton, that he had heard of the deed of gift, and wanted the matter settled in the lifetime of Sallie Thornton, (Daniel Thornton's widow); this was several years before her death; the deed was not delivered at the time it was made.

The marriage of plaintiffs, Willis Scroggins with Martha Scroggins, (formerly Martha E. Thornton) was admitted.

Thomas J. Heard was sworn for plaintiffs and said: I know the paper shown to me, being the deed of gift; it is the same Mrs. Sarah Thornton gave to me to have recorded in the year 1845, prior to August, according to my best impressions; her husband was then living; Wm. D. Thornton, the husband of Sarah, is reported to be dead, but I don't recollect the time; Sarah Thornton is the mother of Priscilla and Martha Thornton.

The deed of gift, of which the following is a copy, was then read to the jury:

"GEORGIA, Elbert County:

"Know all men by these presents, that I, Daniel Thornton, of the State and county aforesaid, do, for the good will and affection that I have for my grand-daughters, Martha E. Thornton and Priscilla H. Thornton, (daughters of Wm. D. Thornton), give to them a certain negro woman named Ann and her child Sina and their increase—the said negroes to be used by the said Wm. D. Thornton and his wife for their benefit until the said Martha E. and Priscilla Thornton becomes of age, etc.

"In testimony whereof, I have hereunto set my hand and affixed my seal, this 17th day of November, 1838.

his
DANIEL ⋈ THORNTON."
mark.

"Signed in presence of
"*Test:* ELIJAH JONES,
"IRA H. CLEVELAND."

"GEORGIA, ELBERT COUNTY.

Clerk's Office Superior Court.    Recorded in Book Z, folio 198.    August 20, 1845.        IRA CHRISTIAN, Cl'k."

John Adams sworn, said: Knows a negro woman named Ann, in the possession of Reuben Thornton, in his lifetime; I asked Reuben if he knew these children had a deed of gift to these negroes? he said, "Yes;" I said you will lose them; he said, "Never, in my lifetime;" this conversation was in 1847, '48 or '49; he did not communicate to me how long he had known of the deed of gift; he said he knew at the time he bought them of this deed of gift; I asked him if he knew of this deed of gift at the time he bought them? he said, "Yes;" he named Ann and her children; she had children, Sina and Seaborn; knows the names of none of the rest; he did not tell me he knew of the deed of gift at the time he was talking to me, and that he did not know of it at the time he bought them; this he did not say; he said they would be his as long as he lived, and when he was dead and gone, he didn't care much about it.

*Cross-examined:* Reuben Thornton never named to me how he found out about the deed of gift; I was living at Thornton's as overseer; he did not discharge me; I served my time out; I overseed for him three years; it has been twenty years since my hearing first became bad; my hearing is right smart worse now than it was ten or twelve years ago; there ain't a great deal of difference between my hearing ten or twelve years ago and twenty years ago; the talk about the deed of gift merely came in conversation; I had heard something about it, and asked him about it; no one else was present; never talked to me about it but once; we were sitting in the piazza; never asked him why he did not find out; did not put myself to that trouble; we talked about a heap of things; I don't recollect of what particularly; I lived at

his quarter the last year I stayed with him, and that was the year the conversation took place—towards the last of the year, as well as I can ascertain; it was at his quarter where I lived that the conversation took place; Ann and her children were at the home house at the time the talk took place; they were at the home house; the quarter was seven or eight miles from the home place.

Thomas J. Adams : Lived with Reuben Thornton as overseer ; does not know exactly the years—about 1852, I think; heard him talk of Ann and her children ; I was down then at the quarter hauling corn ; I told him about there being a deed of gift for these negroes; he said he knew it when he bought them ; I asked Reuben Thornton about theneg roes, because I had heard Scroggins was about to come up here (to Elberton) to see about the claim to the negroes; the children of Ann were Sina, Bose, Louiana, Robin, Jacob—I don't recollect the names of the others, but there were others ; Benajah, I think, was one of Ann's children ; Sina has two or three children, I won't be positive which; I saw Sina the year before last ; the balance I don't recollect when I saw them ; the time I saw Sina was when I was overseeing for Thomas Thornton, son of Reuben.

*Cross-examined :* In the conversation with Reuben, he said they would not bother him in his lifetime, and signified that after his death he did not care what; that was about the meaning of it ; that was all he said about it that I recollect ; he did not say he had fairly bought the negroes of Daniel Thornton, nor any thing about buying them.

Joseph T. Smith : Knows nothing about the girl Sina ; knows Henry, Jacob, Seaborn, Robin and Louiana ; knew them in defendant's possession ; he sold them for forty-three hundred dollars ; I think that was their value ; defendant sold them in January, 1858, I think ; know nothing of the mother of these negroes; it strikes me defendant probably calls Henry, Bose, but am not certain of that ; Henry was about 18 years old ; Jacob was about $16\frac{1}{2}$ years old ; Seaborn was about 15; Robin was about $13\frac{1}{2}$ ; Louiana was about 11 or $11\frac{1}{2}$ ; I am speaking of their ages at the time they were sold ; I am so precise about age and value because I bought the negroes.

John M. Brown : I recollect when Mr. Black demanded some negroes of defendant; I think one's name was Seaborn ;

don't recollect distinctly the other's; there was some two or three names; I think something was said of a negro named Sina; defendant, I think, did not give up the negroes; could not say what defendant said.

Thomas J. Adams, reintroduced: Went to Thomas Thornton's, defendant's, to oversee, Christmas, 1857; Sina was there then; I went after some hogs; she was fixing to try up some fat; she was around the pot with defendant's wife and some other woman.

Andrew J. Cleveland: Knows the negro girl Sina; about two years ago Sina would have brought near $1,100 00; I don't know much about the value of negroes; saw Sina, Seaborn and Jacob in the employment of defendant in 1857; I have seen Sina and Jacob plowing; don't know about Seaborn; Bose was Henry's nick-name, but Henry is the right name.

Jacob M. Cleveland: Knows Priscilla H. Black; she is Wm. D. Thornton's daughter; she was born in 1834, to the best of my recollection; I know her sister—her name is Martha; 'tis said she married Scroggins; I have seen them associating as man and wife; Priscilla married Black; Scroggins and his wife have lived in this county.

*Cross-examined:* Scroggins was reputed to have another wife living in Carolina at the time he married Martha Thornton; her maiden name was Newby; he was married to Martha Thornton about ten years ago; I am related to plaintiffs; Martha is older than Priscilla; Martha and Priscilla are my nieces; Martha Scroggins was born in 1830 (in the latter part) or first of 1831.

*Re-examined by plaintiffs:* My sister, Wm. D. Thornton's wife, brought Ann here on the 1st Tuesday in January, 1829, and a few days after she married Wm. D. Thornton; he kept the negroes a few years, got in debt, and sold them to Beek & Clark; these were sold to Beek & Clark, Ann and another no kin to Ann; Beek & Clark sold Ann to old Daniel Thornton, the father of Wm. D. Thornton; the sale to Daniel Thornton by Beek & Clark was a year or two before the date of the deed of gift; the negro Ann was raised by my father, and sold by me as the representative of my father's estate; old Daniel Thornton has been dead about twelve or thirteen years; his wife was called Sallie; she outlived him some two or three years; he left some property; had two children; had

a tract of land; there were conditions about the tract of land. William T. Thornton's father was Reuben Thornton; he has been dead three or four years.

Plaintiffs introduced and read the will of Reuben Thornton. This gave various articles of property and portions of his estate in specific legacies. None embraced in this suit was thus conveyed. The will contains an item giving all the balance of his estate to defendant. One negro of this family was bequeathed in the will to Benjamin Thornton, and the will was signed by his mark.

### The following testimony was offered by Defendant:

Wm. H. Adams: Held the office of Sheriff of Elbert county, in 1841; (a *fi. fa.* in favor of Wm. B. Davis and John C. ......... on Wm. D. Thornton, Daniel Thornton and James A. Clark was shown to the witness;) have no distinct recollection of *fi. fa.* itself, but from the entries on it in my hand-writing, I know I had it; I made the levy entered on it; was in the habit of advertising my sales in a paper published in the town of Washington; (a number of the "News and Planters' Gazette" was shown to witness;) this is the paper I supposed the advertisement in; it was caused to be inserted by me; I have no recollection except from my entries, and in that way I think the property was sold as entered on the execution by me, and was pointed out by Daniel Thornton.

Plaintiffs, by their counsel, objected to the foregoing evidence, so far as witness stated facts only from the papers.

The Court decided his statement was not evidence; but the witness having stated he made all the entries on the *fi. fa.*, the returns was evidence. And that as to who pointed out the property, the returns on the *fi. fa.* did not prove that. Defendant excepted.

The witness continued: I can only state by whom the property was pointed out from the entry; my invariable custom, when the property was pointed out at all, was to say in my levy and advertisement by whom; I am satisfied from what appears here from the papers shown me, that the property was levied on as the property of Daniel Thornton; the entry says the negroes sold for $402 00; another negro woman sold the same day, perhaps to A. Hammond, for less than $400 00;

a bright yellow negro about 22 or 23 brought about $20 00 or $30 00 more than $400 00 ; Jacob, also Blackwell's property about 40 years old, full size, and likely of his age, brought under $400 00 ; I think the woman sold to Hammond had a child at the time; I bought her afterwards, and she had two children ; I bought her a year or so afterwards.

*Cross-examined:* My impression, that it was sold as the property of Daniel Thornton, is founded entirely on the entry on the execution that it was pointed out by him ; I stated nothing in my entries but what were facts ; don't know that Daniel and Wm. D. Thornton lived together at the time of the levy ; never knew them to live together.

Jeremiah S. Warren : Have heard a conversation between Daniel Thornton, Wm. D. Thornton and Reuben Thornton about the property on the day of the sheriff's sale; Reuben Thornton had agreed to furnish money to buy the negroes; rumor said, previous to the day of sale, that the negroes had been conveyed ; Reuben Thornton had old Daniel and young Daniel both brought in my presence to say whether the statement was true or not; Reuben Thornton said to them, "I am willing to furnish the money to buy the property, provided there is to be no after-claps about it; but if there is to be, I am not willing to have anything to do with it; both Daniel Thornton and Wm. D. Thornton disclaimed that the property ever had been conveyed, or that there was any conveyance in existence at that time; Reuben also stated that if there was any claim they had better get somebody else to buy it; I don't want it, they still answered, and said there was no claim, and said they would rather Reuben would have the negroes than any one else ; old Daniel said there had been a conversation about an instrument. having been drawn up, and said to Young Daniel, "You know about it;" young Daniel said whatever instrument there had been, had been destroyed ; I inquired of the parties to know if this instrument of writing was a will or otherwise; they said it was a will ; I remarked, a party had a right to remake his will at any time; old Daniel said he had intended to give that property to William D. Thornton, but had had debts to pay for him more than the property, and he thought Wm. D. Thornton had ruined him any how; all this took place on the day of sale, in the presence of Reuben, Daniel and Wm. D. Thornton.

*Cross-examined:* I have told all I know about the matter.

Plaintiffs, by their counsel, objected to the admission of the sayings of Daniel Thornton, William D. Thornton or Reuben Thornton, and to the conversation as stated by Jeremiah S. Warren. Plaintiffs objected to any declarations of Daniel Thornton since the date of the deed of gift from him to plaintiffs, Martha and Priscilla. The objections were taken and urged before the testimony came out and as it was given in.

The Court overruled the objections and admitted the testimony not to prove the truth of what Daniel Thornton and Wm. D. Thornton said, but as a fact to show on the day of the sale, Reuben Thornton was inquiring for information as to the title rebutting the statements of the two Adams; that he knew of the deed of gift at the time he bought the negroes.

The execution with the entries on it, testified to by Wm. H. Adams, was then offered. Plaintiffs, by their counsel objected. The Court overruled the objection and admitted the papers and entries, and they were read to the jury.

Defendant offered a copy of the "News & Planters' Gazette" containing advertisements. These were read to the jury.

Defendant then introduced and read to the jury a bill of sale from Daniel Thornton to Reuben Thornton, dated the 27th day of April, 1841, and a deed from Sheriff Adams to Reuben Thornton, dated 4th day of May, 1841.

The following is a true copy of the deed, *fi. fa.* and entries—the advertisement in the "News & Planters' Gazette," and of both the deeds to Reuben Thornton:

"GEORGIA, ELBERT COUNTY:

"*To all and singular the Sheriffs of said State, Greeting:*

"We command you that of the goods and chattels, lands and tenements of Wm. D. Thornton and Daniel Thornton and James A. Clark, you cause to be made the sum of two hundred and seventy-two dollars, principal debt, and sixteen dollars and sixty-seven cents, interest, with interest on the principal sum from the 25th day of September, 1840, which Wm. B. Davis and John C. Douglass, bearers, lately in our Superior Court of Elbert county, recovered against them for debt, and also the sum of fourteen dollars thirty-seven and a

half cents, which to the said William B. and John C., in the said Court and adjudged for their damages as made by reason of their detaining the said debt, as far as their cost in that suit expended, whereof the said Wm. D. Daniel and James A. were convicted and liable as appears to us of record, and that you have the said several sums of money before the Judge of our said Court on the third Monday in March next, to render to the said Wm. B. Davis and John C. Douglass the debt and damage aforesaid. And have you then and there this writ.

"Witness, the Honorable Garnett Andrews, Judge of our said Court, this first day of October, 1840.

"IRA CHRISTIAN, Clerk."

"Levied the within *fi. fa.* on one negro woman named Ann, 20 years old, and her child, a boy named Henry; the property pointed out by one of the defendants, Daniel Thornton. This 10th day of December, 1840.

"W. H. ADAMS, Sheriff."

"Sold the above levied property on the first Tuesday in February, 1841, to Reuben Thornton, for four hundred and two dollars, and after deducting levying, advertising fees, and my fee cost for selling, to-wit: sixteen dollars and thirteen cents, and the principal, interest and Court costs of this *fi. fa.*, leaves in my hands seventy dollars and seventy-seven cents, which is applied to the order of the defendant, this 17th March, 1841.         W. H. ADAMS, Sheriff."

"Received of Wm. H. Adams, Sheriff, two hundred and ninety-nine dollars and ten cents, tax and jury fee due on this *fi. fa.*, 19th March, 1841.    Y. L. G. HARRIS, Att'y."

"Received of Wm. H. Adams, Sheriff, six dollars and eighty-seven cents, Clerk's fee on this *fi. fa.*, this 19th March, 1841.         WM. B. NELMS, D. Clerk.".

"Received of Wm. B. Nelms six dollars and eighty-seven cents, my cost on this case, 22d April, 1841.

"IRA CHRISTIAN, Clerk."

Black and Wife *et al.*, *vs.* Thornton.

"NEWS & PLANTERS' GAZETTE,
" *Washington, Wilkes county, Ga., January 1st,* 1841.

ELBERT SHERIFF'S SALE IN FEBRUARY.

" Will be sold at the Court-house door in Elbert county, on the first Tuesday in February next, within the legal sale hours, the following property, to-wit: one negro woman by the name of Ann, about 20 years old, and her child, Henry, an infant. Levied on as the property of Daniel Thornton to satisfy a *fi. fa.* issued from the Superior Court of Elbert county in favor of Wm. B. Davis and John C. Douglass *vs.* William D. Thornton, Daniel Thornton and James A. Clark. Property pointed out by Daniel Thornton. This 25th Dec., 1840.                    WM. H. ADAMS, Sheriff."

" GEORGIA, ELBERT COUNTY :

"Received from Reuben Thornton six hundred and two dollars, in full payment for a negro woman by the name of Ann, about the age of 19 years, a negro girl by the name of Sina, aged about three years, a negro boy by the name of Henry, aged about two months, which negroes I will forever warrant unto the said Reuben Thornton, his heirs and assigns against the claims of myself and all other persons, and I, the said Daniel Thornton, will warrant the said negroes to be sound both in body and mind. In testimony whereof, I have hereunto set my hand and seal, this 27th day of April, 1841.

                                his
                    DANIEL ⋈ THORNTON."
                                mark.

" WM. B. ALEXANDER,
" WM. J. ROEBUCK, J. I. C.

" GEORGIA, ELBERT COUNTY :

" Whereas, by virtue of writ of *fieri facias* to me directed from the Superior Court for said county, in favor of William C. Douglass and Wm. B. Davis *vs.* William D. Thornton and Daniel Thornton and James A. Clark, security, I have lately levied said *fi. fa.* on one negro woman by the name of Ann, aged nineteen years, and one negro boy by the name of Henry, aged two months, the sale of said negroes being advertised, according to law, was, on the first Tuesday in February last past, exposed to sale, at the Court-house door

in said county, and Reuben Thornton being the highest bidder, said negroes were knocked off to him for the sum of four hundred and two dollars, in hand-paid. I therefore defend the right and title to the said negroes unto the said Reuben Thornton, his heirs and assigns, so far as a sheriff is, by law, bound to do, and no further. This 4th day of May, 1841.

"WM. H. ADAMS, Sheriff. [L. S.]
"Given under my hand and seal, in presence of
"Thomas Johnson, J. I. C.

"STATE OF GEORGIA—Elbert County:

"Clerk's office Superior Court. Recorded the 30th Dec., 1851, in book A A, folio 279. Wm. Johnston, Clerk."

Defendant closed.

Counsel for both parties addressed the jury, and the Court charged them as follows:

"Gentlemen of the Jury:

"The plaintiffs, Black and his wife, and Scroggins and his wife, claim the negroes in controversy, under a deed of gift made by Daniel Thornton on the 17th of November, 1838. The first point of inquiry is, did Daniel Thornton own the slaves, Ann and her child Sina, at the date of the deed? If he did, did he have a right to convey said slaves and their future increase by deed of gift? The next point is, are Priscilla H. Black and Martha E. Scroggins the Priscilla H. Thornton and Martha E. Thornton mentioned in the deed? If you believe, from the testimony, these females are the daughters of William D. Thornton mentioned in the deed, then they and their husbands are entitled to assert, in a Court of justice, whatever right the said females have under the deed of gift.

"The foundation of the plaintiffs' cause is the deed of gift which has been admitted in evidence for your consideration. Is that deed genuine, and was it made by Daniel Thornton, as it purports to be, and at the date thereof? If so, its effect in law is to convey an estate for years to Wm. D. Thornton, his wife, and after that, to the two daughters in *fee simple.* I charge you further, as matter of law arising from this paper purporting to be a deed of gift, that the estate for years in Wm. D. Thornton and his wife was to last until the

youngest of the two daughters became of the lawful age of 21 years. Neither, by the deed, can take until both are of lawful age. Therefore, the Statute of Limitations would not run against either daughter until both are of lawful age; and hence, if you believe this action was brought within four years after the younger daughter became of the age of 21 years, neither of the daughters are barred of their rights by the lapse of time.

" The next point to be considered is, had defendant converted the negroes to his own use before this suit was brought within, four years? and does he hold them under the will of his father? Selling the negroes would be converting them, working them as his own would be converting them, and a demand for them by plaintiffs, or either, and refusal to deliver them by defendant, if he had them at the time, would be evidence of conversion to defendant's own use, and sufficient evidence, if there be no evidence to contradict it. Now, gentleman, does the evidence show all these points to exist in favor of the plaintiffs, according to the case already stated to you by the Court? If the law and evidence do show, then, these points in plaintiffs' favor, you are to find for the plaintiffs the proven value of the slaves, together with reasonable hire, according to the evidence, for the time the defendant had them (the slaves) in possession, and since he sold them, if you believe he sold them, unless the defendant has shown some lawful ground to defeat the plaintiffs' claim, and of this, whether he has shown any lawful ground, you will next inquire. The defendant contends that the deed of gift, if it ever existed, was not delivered to the parties, or to either of them, until after it was sold by the sheriff as the property of Daniel Thornton, and until after Daniel Thornton conveyed it to Reuben Thornton. The law on this point is, ' that a deed of gift is of no effect or validity until it is delivered either to the parties in interest or to some one of them, or to some one else for them. It can only convey property or rights from the time of delivery, and not from the time of its date.' Therefore, if you believe, from the evidence, the sale was made by Sheriff Adams or by Daniel Thornton to Reuben Thornton, or by either of them, and that such sale was made before the deed was delivered to the parties in interest, or some one of them, or some one else for them, then the plaintiffs cannot recover in this case, whether Reuben

Thornton had notice of the deed or not. But the truth of this, as well as all other facts in the case, is a matter entirely for your consideration. The next lawful ground on which the defendant contends the plaintiffs are not entitled to recover is, that even if Daniel Thornton did convey to plaintiff the property in the year 1838, and even if the deed was then delivered, still, if Reuben Thornton afterwards bought at sheriff's sale, or from Daniel Thornton, for a valuable consideration, without notice of the previous gift, he, (Reuben Thornton,) by such subsequent purchase, took a good title to the negroes in dispute. This is the position contended for by the defendant's counsel. The law on this point is this: When a party takes or claims property under a deed of gift, he or she is what the law calls a volunteer; that is to say, they paid nothing for what they claim; such a party—that is to say, a volunteer, must yield to a party claiming under a subsequent or younger conveyance for valuable consideration, without notice of prior claim. If he had notice of the prior deed of gift, then the law does not require the volunteer to yield to him. Notice may be actual or constructive. If the party claiming under the deed of gift records it, or if it is recorded according to law, this is constructive notice, and is sufficient notice; but there is no evidence that Reuben Thornton had such constructive notice. Actual notice is actual information conveyed to defendant personally of the existence of the prior deed of gift. The question for you is, did Reuben Thornton have this actual notice? John Adams and Thomas J. Adams both state, in substance, that Reuben Thornton said he had this actual notice. Do they speak the truth, and were they not mistaken? The testimony which conflicts with the testimony of the two Adams, is the testimony of Jeremiah S. Warren. You recollect what it is you are to consider—this conflicting evidence, and all the circumstances and appearances of the two Adams' testimony, and of Jeremiah S. Warren's testimony, and say, are you satisfied, to a reasonable certainty, that the Adams spoke the truth, and that they are not mistaken as to what Reuben Thornton said?

"If you are satisfied, then, that Reuben Thornton had actual notice of the prior deed of gift, and defendant (if he took by gift or bequest from Reuben Thornton) cannot defend himself on the ground that his father bought for money,

without notice; if you are not satisfied as above stated, of the truth of the Adams' statements, then, if Reuben Thornton purchased for valuable consideration, as stated, from the sheriff, and from Daniel Thornton, or either of them, then his son has a good title against the deed of gift. You must come to your decision from the evidence and the law, as given you in charge, and from no other source.

" You must understand the Court as expressing no opinion whatever as to the facts of these. You alone must judge— you must consider the whole evidence and weigh it, when conflicting, and base your decision on the preponderance of evidence. You must not believe one fact to be true, beyond a reasonable doubt, in order to find it true, but you must believe it only to a reasonable certainty. The actual notice required by law to make valid the subsequent purchase contended for by Reuben Thornton, must be given at, or before his purchase. No notice given to him after his purchase would invalidate his purchase.

" A mere rumor brought to the knowledge of Reuben Thornton, at or before sale, or general report that there was an outstanding claim or conveyance, without defining what sort of conveyance or claim, to whom or who by, is not notice to Reuben Thornton, and especially when he inquires of those most apt to know the truth, and receiving no intelligence except that no claim or conveyance existed. The negroes mentioned in the deed are only Ann and her child Sina. If plaintiffs have made out their claim, and right to recover Ann and Sina according to law and evidence, they have an equal right to recover their natural increase, all of it that you believe to have been in defendant's possession, or converted by him to his own use, before the bringing of this suit.

" The fact that that delivery is not mentioned in the deed, does not invalidate it. The jury must decide from the evidence whether it was delivered or not. The fact that it comes into Court in the possession of a party entitled under it, is evidence that it was delivered. It is important, however, to decide in this case whether the deed was delivered before 1841 or not. Now, the jury must get at that fact by the circumstances of the case which bear on the point. What was the purpose of the deed? how far apart did the donor and donee live? and all the circumstances which go to show

an early or late delivery. If it was delivered to Wm. D. Thornton, or either of his daughters named in it, that would be a good delivery as to all parties lawfully entitled under the gift.

"The counsel for the defendant requested me to charge you, 'when the testimony is conflicting, the jury may consider which is the more probable, and decide accordingly. They shall also take into account the capacity and intelligence of the different witnesses, and if they believe that one of the witnesses was called by the parties at the time of the transaction, to bear witness to it, or was deliberately consulted by them, such circumstances entitle his testimony to special weight.' I charge the above, all but the last, that such circumstances entitle his testimony to special weight; and instead of that, say that his being called on is a circumstance for the jury to consider in favor of giving it special weight. The true issue between the witnesses—the Adams' and the witness Warren—is, not whether Warren heard what he related, because no witness contradicts him, but whether the facts stated by him, to-wit, in substance: that Reuben Thornton was inquiring for information about prior claims to the negroes, are sufficient to make you believe that the Adams' did not speak truly, or were mistaken in the matters stated by them.

"I am asked by the plaintiff's counsel to charge: If Reuben Thornton had notice of the prior conveyance, although it was denied by Wm. D. and Daniel Thornton, still, he is bound by the notice, and did not get a good title by the purchase. The jury are to determine whether he had this notice or not by all the facts of the case.

"I charge you this is the law," and in this connection the Court read to the jury again that part of the written charge showing the difference between rumor or report, and notice.

Counsel for plaintiff requested the Court, in writing, to charge the jury:

"If the voluntary deed from Daniel Thornton to plaintiffs was found in the custody of Sarah Thornton, Wm. D. Thornton's wife, after its execution, it is to be presumed that it was delivered properly, and in immediate execution of the original purpose, unless this presumption is rebutted; and by the circumstances and testimony of which the jury is to judge."

This charge the Court refused to give as especially not

proper in this case, one of the subscribing witnesses having been examined as to execution and proving delivery.

Counsel for plaintiffs further requested the Court to charge the jury:

"The jury must be satisfied from the circumstances sworn to and in evidence, that the deed from Daniel Thornton to plaintiffs was made with intent to defraud creditors or subsequent purchasers before they can set it aside, even if there were no notice, a purchaser at sheriff's sale being bound to look to his title, and purchases at his peril."

This request to charge the Court read to the jury and refused to give it, but charged them, in immediate connection:

"When a party takes or claims property under a deed of gift, he or she is what the law calls a volunteer; that is to say, that they pay nothing for what they claim. Such a party—that is to say, a volunteer, must yield to a party who claims under a subsequent or younger conveyance for valuable consideration without notice of the prior claim."

To which charge and refusal to charge plaintiffs excepted.

The jury retired, and after consultation, returned a verdict for the defendant.

Plaintiffs moved for a new trial on the following grounds:

1st. That the Court erred in admitting the testimony of Wm. H. Adams, so far as he stated facts only from the papers submitted, and allowing the said Adams to state his opinion that Daniel Thornton pointed out the property, and that he was satisfied from what appears here from the papers that the property was levied on as the property of Daniel Thornton.

2d. That the Court erred in admitting the conversation and statements made by, and had between Daniel Thornton, William D. Thornton, Reuben Thornton and Jeremiah S. Warren, as stated by Judge Warren, and in admitting the statements of Daniel Thornton on that occasion.

3d. That the Court erred in refusing to charge the jury as requested by plaintiffs' counsel, that "if the voluntary deed from Daniel Thornton to the plaintiffs was found in the custody of Sarah Thornton, Wm. D. Thornton's wife, after its execution, it is to be presumed it was delivered properly, and in immediate execution of the original purpose, unless this presumption is rebutted and ascertained by the other circumstances in testimony, of which the jury is to judge.

4th. That the Court erred in refusing to charge the jury as requested by plaintiffs' counsel, "that the jury must be satisfied from the circumstances sworn to and in evidence that the deed from Daniel Thornton to plaintiffs was made with intent to defraud creditors or subsequent purchasers, before they can set it aside, even if there was no notice, purchasers at sheriff's sale being bound to look to his title and purchases at his peril; and in charging the jury: "When a party takes or claims property under a deed of gift, he or she is what the law calls a volunteer; that is to say, they paid nothing for what they claim. Such a party—that is to say, a volunteer—must yield to a party who claims under a subquent or younger conveyance for valuable consideration with notice of the prior claim.

5th. The Court erred in charging the jury as follows: "The testimony which conflicts with the testimony of the two Adams is the testimony of Jeremiah S. Warren," and in saying or intimating, that "there was any conflict between Warren and the Adams', and not leaving the whole subject, as to the conflict between the witnesses, so far as the facts were concerned, to the jury."

6th. The Court erred in charging the jury, "that you are to consider the conflicting evidence and all the circumstances and appearances of the two Adams' testimony, and of J. S. Warren's, and say you are satisfied to a reasonable certainty that the Adams' spoke the truth, and were they not mistaken as to what Reuben Thornton said? If you are satisfied Reuben Thornton had actual notice of the prior deed of gift, and defendant, if he took by gift or bequest from Reuben Thornton, cannot defend himself on the ground that his father bought for money, without notice. If you are not satisfied as above stated of the truth of the Adams' statements, then, if Reuben Thornton purchased for valuable consideration, as stated, from the sheriff and Daniel Thornton, or from either of them, then his son has a good title against the deed of gift."

7th. The Court erred in refusing to give the within charge requested by plaintiff's counsel without the modifications made by the Court in writing.

8th. The Court erred in charging the jury: "If the party claiming under the deed of gift records it, or if it is recorded according to law, this is constructive notice, and is sufficient

notice.    But there is no evidence that Reuben Thornton had such. constructive notice.    Actual notice is actual information conveyed to defendant personally of the existence of the prior deed of gift."

9th.  The Court erred in charging the jury as follows: "A mere rumor brought to the knowledge of Reuben Thornton at or before sale, or general report that there was an outstanding claim or conveyance, without defining what sort of a claim or conveyance, to whom or who by, etc., is not notice to Reuben Thornton, and especially when he inquires of those most apt to know the truth, and receiving no intelligence, except that no claim or conveyance existed."

10th.  The verdict is contrary to the charge of the Court.

11th.  The verdict is contrary to the evidence.

12th.  The verdict is strongly and decidedly against the weight of evidence.

The Court refused the new .trial, and that is the error assigned.

VANDUZER, HUTCHISON, and WASDEN & NELMS, for plaintiffs in error.

HESTER & AKERMAN, *contra.*

*By the Court.*—LYON, J., delivering the opinion.

We think the testimony of the witness, William H. Adams, was legal and admissible.    He says the entries are in his hand-writing; that he has no recollection of the transaction; that he can only state by whom the property was pointed out from the entry.    His invariable custom, when the property was pointed out at all, was to say in his levy and advertisement by whom; that he is satisfied from what appears from the papers shown him, that the property was levied on as the property of Daniel Thornton.    His impression, that the negroes were sold as the property of Daniel Thornton, is based entirely on the entry on the execution; that it was pointed out by him.  He stated nothing in his entries but what were facts.    The rule on this subject, as stated by Mr. Greenleaf, is this: "If the party who made the entry is dead, or being called, has no recollection of the transaction, but testifies to his uniform practice to make all his entries truly and

at the time of each transaction, and has no doubt of the accuracy of the one in question, the entry unimpeached is considered sufficient, as original evidence, and not hearsay, to establish the fact in question." 1 *Greenleaf on Ev.*, sec. 115 ; also, *Williams vs. Kelsey & Halstead*, 4 *Ga.*, 373. But why was not the bill of sale made by the witness, as sheriff, under this sale, accompanied by the execution with the entries in question, sufficient evidence of the fact in controversy, without further proof?

2. The conversation and declarations between and among Reuben, Daniel and William D. Thornton, in respect to an outstanding title or claim to the negroes, and on the day of the sheriff's sale, as testified to by the witness, Jeremiah Warren, was not objectionable. It was certainly competent for the defendant to show that Reuben Thornton bought without notice, if he could, and how he could do so otherwise than by showing what was said and done by Reuben Thornton and others interested in the sale, at and before the sale, I cannot very well see. It is not hearsay evidence only, but acts, a part of the circumstances surrounding and attending the sale and purchase. The testimony was certainly proper to go to the jury. But what it was worth or what it proved, is a very different question, as we shall see.

3. The plaintiffs were entitled to the charge requested ; that is, "that possession of the deed having been shown in the wife of William D. Thornton, one who took an interest under it, it is to be presumed that it was delivered properly and in immediate execution of the original purpose." The delivery of a deed may be inferred from its possession by the grantee. The evidence of one of the subscribing witnesses to the deed was, "that the deed was made for the purposes named and specified in the deed." The fact that the deed did not actually pass out of the possession of Daniel Thornton at the time of its execution, does not affect the title or the presumption of delivery arising from the subsequent possession of the deed by the grantees. That fact—the retention of the deed by him at that time—is fully accounted for by the additional fact, testified to by the witness, that none of the grantees or persons taking an interest under the deed were present to receive it. The natural and legal presumption arising from the facts as proven, is, that the deed was actually delivered to the grantees or some one of them

as soon after its execution as it could conveniently be done, and that when so delivered, it related back to the date of signing and sealing. *Rushing vs. Shield & Ball*, 11 *Ga.*, 640; 4 *Kent*, 455, note *a; Bunn vs. Winthrop*, 1 *Johns. Ch.*, 329.

We were not certain that we fully understood the point made, or intended to be made, in the request as stated in the fourth ground of motion for new trial, and if we did properly understand it, the Court were not fully agreed upon it; so we concluded not to pass upon it, but to leave it an open question.

4. The Court below erred in charging the jury, " that the testimony which conflicts with that of the two Adams', was that of Jeremiah Warren. The conflict being denied in this case, it was a question for the jury to determine, and not the Court.

The Court further charged the jury, in immediate connection with the foregoing charge: " You are to consider the conflicting evidence and all the circumstances and appearance of the two Adams' testimony and of Jeremiah S. Warren's testimony, and say, are you satisfied, to a reasonable certainty, that the Adams' spoke the truth, and that they are not mistaken as to what Reuben Thornton said ?" This charge is also excepted to, and we think the exception well taken. The form in which the proposition was put to the jury discriminated against the testimony of the Adams'. This ought not to have been done, for all the witnesses testified to admissions and declarations; each had to depend upon his memory of what was said in their presence and hearing, and why may not Jeremiah S. Warren's recollection have failed as that the Adams' should ? The record shows no reason. There were two witnesses against him, and, so far as anything appears to us, they were equally entitled to credit.

The weight of the testimony was against that of the witness Warren, because they supported and corroborated each other, while Warren's stood alone; that is, allowing that there was a conflict. But was there in fact any conflict between the testimony of these witnesses? We do not think there necessarily was. The testimony of all the witnesses may have been true. Notwithstanding the conversation to which Mr. Warren testified, Reuben Thornton may have

Black and Wife *et. al.*, *vs.* Thornton.

known all about the deed of gift on which plaintiffs rely. After that conversation, and before the purchase, he may have heard exactly how the matter stood.   He may, in fact, have known at the time.   The Court ought to have charged the jury on this subject, that it was their duty to reconcile this testimony if they could, so that the whole might stand, if possible ; but if irreconcilable, then, the witnesses being equally entitled to credit, they must find according to the weight of the evidence, of which they are to judge.

We agree with the Court below, that " a mere rumor brought to the knowledge of Reuben Thornton at or before the sale, or general report that there was an outstanding claim or conveyance, without defining what sort of convey- ance or claim, to whom or who by, etc., is not notice to Reu- ben Thornton ;" but when he adds, " especially when he in- quires of those most apt to know the truth, and receiving no intelligence, except that no claim or conveyance existed," we differ with him.   This may be true as a general proposition, but when considered in reference to the facts of this case, it is not true.   There was no evidence before the Court that the notice Reuben Thornton had received was mere loose or vague rumor.   The testimony of Mr. Warren is, that " Reuben had agreed to furnish money to buy the negroes.   Reuben said previous to the day of sale, that these negroes had been con- veyed."   This implies that he knew or had heard more about this deed than a mere vague and loose report or rumor : he said that they had been conveyed.   He had old Daniel and William D. brought into his presence to say whether the re- port was true or not.   Now, if Mr. Thornton had heard about this conveyance previously, how did the denial of Dan- iel or William D. aid him, or why did he depend upon that information at that time ? for both of these men were inter- ested in misleading him ; or how does it appear that what he had heard about the conveyance was a vague and loose re- port?   It is due to the Court below to say, " that in his charge he did tell the jury, if Reuben Thornton had notice of the deed, although it was denied by Daniel and William D., that he would be bound by the notice, and the jury was to determine from all the facts of whether he had the notice," but when he connected his understanding of the effect of Warren's testimony with that of a report or rumor as notice, as I have already shown, he gave to that evidence an impor-

tance and bearing to which it was not entitled, and which was well calculated to mislead the jury. The whole sense of the charge is, that Mr. Warren's evidence showed that Reuben Thornton bought without notice, or at least without such notice as would affect his title; while, in the opinion of this Court, that evidence was strongly corroborative of the evidence of the Adams', that he did have sufficient notice before the sale to put him on his guard and to buy at his peril.

Should we be mistaken in this, however, still there is nothing to show that after that he did not get full notice before he bought. Then, there was another and a very significant fact in the testimony which the Court lost sight of. I allude to the warranty from Daniel to Reuben Thornton, dated 27th April, 1841, just after the sheriff's sale, for the identical negroes, and one other. If Reuben Thornton got a good title by the sheriff's sale free of notice, why take another and a warranty from Daniel for the same negroes? All the presumptions arising from these facts were excluded by the direction given.

The evidence is strong—very strong—that Reuben Thornton bought with notice.

As the case goes back for a new trial, we have not felt it necessary to pass upon the question, whether the verdict is against the evidence, for on the next trial the evidence may be very different.

Judgment reversed.